Good morning and welcome to our week of oral arguments here in Atlanta. We're pleased to see you and thank you for coming in to present your cases. Just a reminder, I know you've been told this when you checked in, but we have our traffic light system for timing your arguments. When the light turns yellow, you have two minutes remaining in your allotted time, and when the light turns red, we ask you to conclude your remarks quickly unless you're answering a question from the court at that time, and then we'll let you finish your answer. All right, let's get right to it. Our first case of the morning is case number 2313430, United States of America v. Emory Carter. Mr. Dotson. Good morning. I'm Jonathan Dotson representing Emory Carter, and may it please the court, I intend to focus today on the drug predicate issues, specifically as they relate to conformational isomers of cocaine or conformers. In this circuit, when the statutory language of an offense is clearly overbroad, then that offense is disqualified as a predicate under the categorical approach with two exceptions. If the offense is divisible, then the modified categorical approach applies, and under Shamu, if the overbreadth implicates something that does not exist in the real world, then in that case, the statute isn't clearly overbroad. Are you leaving out the realistic probability? The realistic probability test, as the circuit law has said for a long time, really only applies when the statute isn't clearly overbroad on its face. Sometimes it's ambiguous or of uncertain reach, and it's in those cases that the Supreme Court in Duenas-Alvarez, and this Court has made that distinction, that it's my burden to show something more. If I were arguing that although the statutory language isn't overbroad, that the State Court applied it in an overbroad way, then of course I would need to show an example of the State Court doing so. If it's not clearly overbroad, it's not a realistic probability that it's not overbroad. Correct. If it's not clear. In this case, I would argue it's particularly clear because we're dealing with an overbreadth as a matter of taxonomy. The word stereoisomer is sort of a genus of chemical, whereas conformers and optical and geometric isomers are species within that genus. Now, in Shamu, he didn't show there was anything more than optical and geometric isomers, so it was the same thing. Professor Garg in this case has shown, and it's never been disputed by the government, that cocaine conformers do exist in the real world. They result from an exceedingly common circumstance, which is the presence of adulterants or impurities, and that they are a form of stereoisomer. And what happens in a Federal prosecution if it's been adulterated or diluted and you've got a conformational isotope? I don't know that it's been litigated, but it would be potentially a defense if the defendant can prove that it was actually conformational isomers of cocaine and not non-conformers of cocaine. And any evidence of that, any authority, I mean, there's been so many Federal cases, and nobody's, it's not occurred to anybody that these adulterants are common and conformational isomers are common in cocaine, and therefore there's no cocaine violation under Federal law? I don't know that, my best guess is it hasn't been tested for that, that the defense bar hasn't raised that issue. But I think that we can, I think that the fact that the statute, that the Georgia General Assembly and that Congress chose these precise technical words to define cocaine, as a matter of statutory construction, there's a presumption that every word is to be given meaning when possible. Well, let's say we disagree with you and that we think that the realistic probability test would apply. So you have provided us with a declaration that states that conformational isomers exist and it can be expected that they will occur when someone cuts cocaine, as Judge Clarence has just discussed, but the declaration does not say how often those isomers form, correct? It does not. And it doesn't say in what quantities they form, is that correct? That's correct. So how have you shown the existence of conformational isomers actually matter here? I think that the realistic probability test, if it applies in this context, is satisfied by showing that they do exist. I think there is an inference, is the closest that the record comes, that we know cocaine is often adulterated, sometimes very highly adulterated, that this is a common thing. That declaration also says that it's a highly studied area in other contexts because it affects drug effectiveness. Well, we hold the petitioner in Shamu for not showing that the isomers regulated by state law but not federal law exist in the quantities required for an offender to be prosecuted for possessing them. It seems to me, and I'm just speaking for me, that your client has failed to do the same here. I would argue that that's dictated in Shamu because they didn't show that they existed to begin with. And that to extend Shamu to that kind of inquiry replaces the categorical approach with the sort of empirical analysis that the Supreme Court recently forcefully rejected in Taylor. The government made the same type of argument, saying there's no examples of us prosecuting attempted Hobbs Act robbery in a way that didn't involve a force element. And the Supreme Court said, what does that prove? It said that the government was backtracking on the categorical approach, that the government's prosecutorial habits were not material. And then it relied entirely on hypotheticals to show how attempted Hobbs Act robbery could be violated in a way that doesn't involve a force element. So I think that the Supreme Court has made that distinction, I'm trying to make, or this Court has made that distinction between facially overbroad, clearly overbroad statutory text. There's definitely a lot of examples where the overbroad isn't as clear, I think, as it is here. And text that isn't so clear when the defendant may have some burden. And to be clear, I don't think in an ACCA context we do have the burden. Shamu was an immigration case, so the immigrant had the burden under the INA of showing clarity. But under ACCA, that's the government's burden to show that a predicate with certainty, is the words used, that an offense qualifies as a predicate. And that's something that the Supreme Court's recently reaffirmed in the case Pereda, 592 U.S. 224 footnote 7, that those different burdens apply. But to the extent I have a burden, I think it's to show that the statutory language is clearly overbroad. If all I showed is that it might be overbroad, then, excuse me, that it may be overbroad, then I think it's a closer call. I still wouldn't concede that I have the burden because it's an ACCA context, but I do think maybe in this Court's case law, some of the examples show the realistic probability was put on the defendant when the statutory overbreadth wasn't clear. The reason I ask you that, of course, is that's what your expert said. He did, and I took that to mean he didn't, you know, what he demonstrated was as a factual matter, cocaine contains conformers, but he didn't want to opine on how that affects the law. He wasn't exercising a statutory construction exercise. That wasn't within his purview. But he demonstrated indisputably, or at least it's not been disputed, that there is an overbreadth, in fact, between the term any stereoisomer of cocaine and the term geometric and optical isomers of cocaine. So I think it was good of the expert not to weigh in on the legal implications. That's not what he was asked to do. And suppose it's within clearly erroneous findings, and there's a finding that, sure enough, dilutants, contaminants, cause the conformational isomers, but the conformational isomers don't keep cocaine from being cocaine. In other words, you still have the other two. What then? I think if there was a factual finding, or if there was some showing that conformational isomers cannot exist independently of some form of cocaine that qualifies, then under 841, it would be a mixture that test positive that I would lose in that case. Not that it cannot exist, but they don't kill off the other two isomers. In other words, you produce a conformational from a dilutant or contaminant, and the existence of the other two isomers, okay, fine. You could just have a clone, in effect, if that's possible in organic chemistry. That still wouldn't mean that when it comes to what the federal statute requires, the Because to produce the conformational isomer, you would have to have one of the other two, and if it doesn't kill off one of the other two, then you've got to see what I'm talking about. If I understand your point, I think it would depend on when that adulterant was introduced. In other words, if the person who sold the cocaine introduced the adulterant, then necessarily they possessed the precursor before it became conformational isomers. Am I not answering the point that you made? Well, I took it a step further. Suppose, and you might be assuming, and it may be in the expert's declaration, but I didn't see it. You're assuming that once the adulterant or the contaminant gets in there, it all turns to conformational isomers. I'm assuming it doesn't, because if it did, the test that ran for the precedent isomers wouldn't show anything. Candidly, I don't think the record speaks to whether it all converts into conformers. I also don't know that we are testing to distinguish between that. The record doesn't speak to that either. I would just say I don't know why the prior would be that it can't happen that way, and falling back on the statute was defined this way. I mean, I'm sure that the General Assembly intended to cast a wide net, but they cast a precise one. It presupposes that this is something that can happen, or there would be no reason to define it in that way. My next question, a penultimate question, is there's a lot we don't know here, and a lot you're quite candidly and I appreciate forthrightly saying don't know. So isn't the motion entitled to a remand for a hearing, an evidentiary hearing, where we actually have a decision from the district court and fact findings? I think that it, I mean, because it was raised below, I don't know that the government gets another opportunity to meet its burden. I'm not talking about the government, I'm talking about the judicial system trying to figure this out. I mean, if you had any other kind of case that was calling out for fact findings, and I think you and I are, you know, over a couple of drinks could agree with that, what we would do is send it back for the fact findings. If the judge just said, beat the hay out of me, and that's what this judge in his colorful self said, I don't know, I don't understand this. We would want somebody to make a factual inquiry or preside over a factual inquiry in which we could find out, and he wouldn't. And we could learn a decision from him or her, and it would come up to us. So isn't that really what we ought to do here? I think that's certainly a permissible remedy in this case. I do think there's certainly a lot of circumstances where the court just holds the parties to their burden below and doesn't, and rules, you know, without that kind of remand. And so I think under ACCA, because it was the government's burden below, and because if this court agrees with my argument, that I don't know about entitled, but that vacating the conviction would be a permissible remedy as well. Thank you. The conviction, I think it's the, it's a, there's no jurisdiction in the same way that there isn't in the 924C to convict him of a non-predicate. It's affirmative. If I'm right, then he's been affirmatively convicted of a non-predicate, and the evidence gets no, no matter what the evidence is, it's no closer to proving ACCA, to proving that. So under your approach, that blew the penultimate term, but under your approach, everybody who's been convicted of this crime was wrongly convicted. I think it would depend on if it was raised, and I think there would certainly be hurdles in a motion to vacate circumstance. Wrongly convicted would not depend on whether it was raised. Whether they had a remedy would depend on whether it was raised, but according to your approach, you're asking us to hope that everybody who's been convicted of this crime in these circumstances was wrongly convicted. Yes, Your Honor, and I think that's true whenever it finds something's a non-predicate, something doesn't qualify. I guess the point I was trying to make to jurisdiction is that the same St. Hubert analysis that applies in the 924C context would apply here in ACCA. Thank you. Thank you, Mr. Walker. Good morning, Your Honors, and may it please the Court, Stuart Walker for the United States. I want to get to the questions surrounding the application of the realistic probability test, but before I do that, I'd like to offer the Court what I think is a simpler, more direct route to affirming the ACCA sentence here, and that is for the Court to hold as a matter of law that there is none and can be no overbreadth in this case. Let me explain what I mean by that. Mr. Carter's categorical overbreadth argument is really self-defeating. It's essentially self-defeating for these reasons. If conformational isomers are a kind of stereoisomer that is captured in the Georgia cocaine definition but not in the federal cocaine definition, and they exist, two things that we're treating as a given for purposes of this case, and if that is true, then they are not, under Georgia law, controlled substances, and that's by application of OCGA 161321 paragraph 4. He argues on page 29 of the blue brief that conformational isomers are not a controlled substance as a matter of Georgia law. Now, what is the consequence that follows from that? If conformational isomers are not a controlled substance under Georgia law because they don't appear on both the Georgia and the federal drug schedules, then Georgia cannot regulate the possession, manufacture, distribution, et cetera, of conformational isomers. And if that's the case, then state law doesn't punish more conduct than federal law. And that, at the heart of things, is the question in the categorical overbreadth context. And I'll point the Court to its statement in the Jackson decision, 55F4846 at page 850. It says the state conviction cannot serve as an ACCA predicate if it, the state, punishes more conduct than ACCA's definition of serious drug offense. If there is conduct that would violate state law but fall outside of ACCA's serious drug offense definition, the state law cannot serve as a predicate offense. In this case, under Georgia law, there is no conduct that is prescribed by Georgia law that is permitted by federal law. Unless the term any isomer covers conformational isomers. Well, Your Honor, the state definition is stereoisomers of cocaine. And we take conformational isomers to be a subset of stereoisomers, just as optical and geometric isomers are as well. I'm sorry, I don't understand that argument. If I say conformational isomers are a type of isomers and Georgia law punishes all isomers, then Georgia law would punish a conformational isomer that is not the traditional two. I see where you're going, Your Honor, and maybe I didn't make this point clear. Under Georgia's definition of controlled substance and under the CW case, which is cited in the briefs, the Georgia Court of Appeals has given a construction to Georgia's statutory definition of controlled substance. And what they've said is, under the plain language of the statute, a drug is a controlled substance as defined in 161321, only if it is listed as such in both the Georgia and the federal drug schedules. So our position is that because conformational isomers are not listed, and I think it's undisputed here, are not listed on the federal drug schedules, then they are definitionally excluded from being a controlled substance as a matter of Georgia law. And if that's the case, then it means that Georgia law doesn't and can't prosecute a person for possessing with intent to distribute or distributing or manufacturing conformational isomers. So although stereo isomers is in Schedule II under Georgia law, the definition of controlled substance performs kind of a pairing or a trimming function. It says to the extent it's not scheduled on both the state schedule and the federal schedule, it's not a controlled substance. And so I offer the Court that rationale because what that means is you don't get into questions about a realistic probability of enforcement by the State of Georgia with respect to conformational isomers because it's not a controlled substance under State law. So not only is there not a realistic probability, there's zero possibility that Georgia could prosecute that. So there's no possibility Georgia's definition could ever be broader than the federal definition? That's our position, Your Honor. We think as a matter of Georgia law, and I want to be clear, Georgia is alone among the States in our circuit that tie, as a matter of State law, the definition of controlled substance to something that appears on the State and federal drug schedules. Alabama doesn't do it and Florida doesn't do it. The CW case by the Georgia Court of Appeals, Your Honor, I'll be candid with the Court. I think what the Georgia General Assembly intended to do with its definition is to treat as a controlled substance anything on the State schedule or anything on the federal schedule. In other words, I think they meant this to be as capacious as possible, but they said it must appear on the State schedule and the federal schedule. And CW, which is the State's intermediate court, the highest court to consider this opinion, and I think we take State law as we find it, they have said that it's not a controlled substance unless it appears on both. And I think the reason I said my friend's argument is self-defeating is because he establishes, with the help of Professor Garg, that conformational isomers are a thing that are not on the federal drug schedule. And the implication of that, just like so, CW involved marijuana. Marijuana under Georgia law, CW held, is not a controlled substance. And the reason is marijuana is not on the Georgia drug schedule. It's on the federal drug schedule. But because it's not on both, it's not a controlled substance offense. We're arguing by analogy the exact same thing. Because conformational isomers are not on the federal drug schedule, and they're only on the State drug schedule, then it follows that they're not a controlled substance under Georgia law. Your argument is this is a mirror image of CW. Exactly. That's exactly right. I didn't see that argument. Is this something you were reading the briefs two nights ago? No, no, no, your Honor. And I'll explain, and I take full responsibility for this. This argument is laid out in the section of our brief that talks about controlled substance offenses under the guidelines because that's where my friend raised the CW case, and we were responding to that argument in that section of the brief. But in preparing for the argument, it occurred to me I could have made that the centerpiece of the ACCA argument as well because the logic dictates that there's no overbreath. And if there's no overbreath, we don't ask questions about what is the State likely to do if it can't, in fact, outlaw the conduct in question. So we think that's the simplest and most straightforward path to affirming the ACCA sentence here. But as a backup, the position we've taken is that the other side, A, has a burden to show a realistic probability that the State of Georgia would charge, prosecute, and convict someone for possessing with intent to distribute just conformational isomers. Did the Supreme Court in Taylor undermine the realistic probability test, as your opponent argued? Not at all, your Honor. And in his reply brief, he says Taylor abrogates the test. It did not. It said it doesn't apply in that case. And the two reasons it gave for not applying it only bolster the case for its application. Here, let me explain. Taylor looked at Duane S. Alvarez and says, okay, there we came up with this realistic probability test because we had federalism concerns. You had a State, you had a federal court asking what is the definition and scope of a State's law. And because we defer to the State courts to give the final interpretation of that, it made sense to say, well, what do the courts do? Can we find sample prosecutions where this has been done? In Taylor, the question was whether attempted Hobbs Act robbery was a crime of violence under 924C. And the court said, here, there's no federalism concern. You have a federal court comparing the elements of two federal offenses. And number two, they said in Duane S. Alvarez, we came up with this test because there was overlap between the definition of the State crime and the definition of the federal crime. And they said in Taylor, there's no overlap here. No element of attempted Hobbs Act robbery is in common with any element of a crime of violence under 924C. So where there's no overlap, there's no reason to apply the test. And so Taylor just said Duane S. Alvarez has no application here. But where those two factors are present as they are here, you have federalism concerns because you've got a federal court asking what the State of Georgia would or could do with respect to its cocaine definition. So that implicates Duane S. Alvarez. And two, there's an admitted overlap between the definition of cocaine under Georgia law and federal law. And the question is, given the undisputed overlap, we're testing the margins. We're testing the borders. And to do that, we need to make an assessment of what the State courts would do. And so far from jettisoning the test, we think Taylor really just underscores the types of cases in which it applies. Going back to the realistic probability test and the declaration that has been submitted by opposing counsel, can you explain to me, looking at that declaration, how there is not a realistic probability that Georgia is not punishing more conduct than the federal government? The declaration says that conformational isomers exist and they can be expected to form when somebody cuts cocaine with other substances, which occurs often. I don't think I can tell you from the declaration that it proves there's not a realistic probability. I take the declaration to have established really two things, that conformational isomers of cocaine exist and how they're introduced into cocaine. I view this case very much as picking up where Chamu left off. Chamu got to the point of assessing the evidentiary record and said that declaration doesn't establish that cocaine has any of these non-geometric isomers. Professor Gard's declaration, I think, does fill that gap. But the question is, as Chamu's opinion expressed, just identifying the existence of these things is not enough. In footnote three, the court was careful to say, that's a necessary first step, but more is likely required. The question I think this case presents, if the court is not going to accept the argument that I outlined at the beginning but rely on the realistic probability test, this case poses, what is that more? I think the more is, our position would be they've got to show a prosecution, the classic Duane S. Alvarez general rule for the realistic probability. This case said in Bortzakis in 2019, there is only one exception to having to show a sample prosecution. And it relied, like Chamu did on a case called Ramos from 2013. And that stands for the principle that sometimes textual overbreadth alone can establish a realistic probability. But I urge the court to look very carefully at Ramos. It is different in kind, not degree, from this case. That was an immigration case where you had the determination of whether the immigrant had committed a theft offense under federal law. He had a Georgia conviction for shoplifting. And the court had to compare Georgia's shoplifting statute to the definition of federal generic theft offense. And that was a divisibility case. They said the Georgia shoplifting statute is divisible into two different crimes. One required the perpetrator to intend to appropriate the property for his own use. And that was outside the generic definition. But the other required the perpetrator to intend to deprive the owner of his property interest. And the court said, well, here, the text of the statute makes abundantly clear. We don't need to see a case. It prohibits two different crimes. The text itself shows the realistic probability. You've got nothing like that in this case. The textual variation here is stereoisomers, on the one hand, in the Georgia statute, and geometric and optical isomers in the federal definition. That textual difference tells us, I think, exactly nothing about what the state of Georgia could do, is likely to do, is realistically probable to do with that difference. So you're suggesting, though, because you're pointing to one way that Shamu pointed out. They said the easiest way is to point to a case in which the state statute was used to prosecute such conduct. Correct. Shamu specifically says there is another way that you can also point to the statute. If it creates a realistic probability, the state would apply that conduct beyond—and I now can't read my writing— the different words alone are not enough in the declaration. There are—you can still show a realistic probability. But if you're saying you have to—you can only rely on the prior prosecution, aren't you reading out that other option that Shamu gave? No, Your Honor. The option, the other alternative option Shamu gave is where the text itself shows a realistic probability. And for that proposition, they say Ramos. Ramos is the only time the circuit has ever applied anything other than showing a sample prosecution where the text itself establishes it. And as I was trying to demonstrate, Ramos is not anything like this case because it involved a divisible statute where the text alone did suggest that, sure, the state could prosecute some theft offenses that would qualify under the federal generic definition and some that did not. In fact, this is what it says. It says, here the statute expressly requires alternate intents. One of those intents, the one at issue here, does not render the crime a theft offense. The statute's language, therefore, creates the realistic probability. It will punish crimes that do qualify as theft and crimes that do not. Duane S. Alvarez does not control this case. With that, Your Honor, unless there are further questions, we'd ask that the judgment of the district court be affirmed. I get it in your argument. You don't think there's any need for a hearing? No, Your Honor. In fact, I would resist any temptation to do that based on the Supreme Court's language in Moncrief where it said that the court has long deemed undesirable post hoc investigation into the fact of prior offenses. And it says, quote, the categorical approach serves practical purposes. It promotes judicial administrative efficiency by precluding the relitigation of past convictions in many trials conducted long after the fact. I'm talking about an inquiry into conformational isomers and whether they test present and whether they can exist wholly apart from themselves. If they can exist without the continuous existence of one of the predicate isomers, and I can't read the declaration to say they can, but if they can't exist without that, then they lose too, don't they? Absolutely. I agree with that 100%. Is that a factual question? It is a factual question, Your Honor. I guess I just disagree that in this case it presents any need to do that. You don't win two grounds instead of one. Is that what you're telling us? That's not what I intended to tell you, Your Honor. Well, we might disagree with you on one of those grounds, so you ought not be jettisoning in on another one, I would think. Well, I guess I see, Your Honor, there are three paths forward for us. The first argument, the second realistic probability, and then if there's further fact-finding to be done on which we could establish what Your Honor posited and win that way too, that's a third way to win, and we're happy to win as many ways as we can. Thank you, Your Honor. So the government has reappropriated its controlled substance offense argument and made it also in the context of ACCA. The problem with that argument is the same in both situations, but there's additional problems in the ACCA context. The government's point, as I understand it, is that the parts of Georgia cocaine that aren't controlled substances aren't controlled substances, which is a point I'd freely concede, but it answers the wrong question. The element of Mr. Carter's convictions was cocaine. He didn't have to admit and no one had to prove that cocaine qualified for Georgia controlled substance to sustain those convictions, let alone that it categorically qualifies as those things. The controlled substance definition in Georgia does work in other contexts, as we saw in CW involving the child abuse registry, but it's simply not an element, and under the categorical approach, we're looking at whether the element qualifies as controlled substance, which is the operative phrase in 4B12B. The additional problem in ACCA is that how State defines controlled substance isn't relevant at all because under ACCA, the terms of the statute say reference federal law. There is no State approach to defining controlled substance under ACCA. Next, I wanted to respond to the government's distinctions, attempts to distinguish Taylor. As to the federalism concern, if this Court agrees with me that Georgia statute is clearly overbroad, it would suggest to me that respect for the Georgia legislature requires interpreting the words that they wrote, not as opposed to looking to case law that doesn't exist. To be a textual argument. That's what he's saying is what the statute says, but in candor, he said, I think the legislature just screwed up. That's not what they really meant. Now, how in the world he can define that, I don't know, but that's, I think, apparently that's what he said. Fair enough, but I think I would only counter that sounds more like a legislative intent argument, which the text is the best evidence of, we've said. The Court has said in other contexts. Then the other way he distinguished it is he said that in Duenas-Alvarez, there was overlap. Well, here there's overlap, but cocaine is broader under the text of the statute. Duenas-Alvarez was an example, it was the first example where they used that test where the defendant was saying California theft, although it appears to be in all of the INA, there's something unique about how California applies its natural and probable consequences doctrine. So the Court said, well, you need to show in the case law. And the cases that he cited, frankly, didn't seem remarkable. They seemed like normal, natural and probable consequences. I think the Court sort of addressed the point I wanted to make about Shamu, which is that it said you don't just need a sample prosecution. So when it then said more in a footnote, I think it was more is likely required. It couldn't have been saying what we really mean is sample prosecution. And then the last point, the Government said Ramos is the only case where the Court has made an exception to the realistic probability test. I will admit it's the only case I cited, but there are other examples. Saeed, 28, F4-13-28, that was about Florida marijuana being overbought on the basis of stalks. And Eason, 953 F3-1184, where the Court said the Government can't read the phrase or property out of Hobbs Act robbery in order to say that it necessarily required force against a person. So in closing, while the categorical approach is not an invitation to apply the legal imagination, neither is realistic probability test an invitation to replace the categorical approach with an empirical analysis. I think that's what the Government is asking this Court to do. Instead, it should just interpret the law as written, apply the categorical approach, and therefore find Mr. Carter's offenses aren't serious drug offenses or controlled substance offenses. Thank you. Thank you.